345 So.2d 1062 (1977)
J. Ed STRAUGHN, etc., Petitioner,
v.
SUN OIL COMPANY (DELAWARE) et al., Respondents.
F.M. "Bubba" FISHER et al., Petitioners,
v.
SUN OIL COMPANY et al., Respondents.
AMOCO PRODUCTION COMPANY, etc., Petitioner,
v.
J. Ed STRAUGHN, etc., et al., Respondents.
Nos. 49387-49391, 49397 and 47274.
Supreme Court of Florida.
March 17, 1977.
Rehearing Denied June 7, 1977.
*1063 Robert L. Shevin, Atty. Gen., and Larry Levy and Joseph C. Mellichamp, III, Asst. Attys. Gen., Gerald L. Brown, of Wells, Brown, Caton & Brady, Pensacola, and A.L. Johnson, of Johnson, Johnson & Green, Milton, for petitioners, J. Ed. Straughn and F.M. "Bubba" Fisher.
Peter J. Winders, of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, and W. Spencer Mitchem, of Beggs, Lane, Daniel, Gaines & Davis, Pensacola, for respondents, Sun Oil Co.
Wofford H. Stidham, of Holland & Knight, Bartow, for petitioner, Amoco Prod. Co.
Robert L. Shevin, Atty. Gen., and Larry Levy and Joseph C. Mellichamp, III, Asst. Attys. Gen., for respondents, J. Ed. Straughn.
BOYD, Justice.
Owners in fee of real property in Santa Rosa County and Hardee County have entered lease agreement with various oil companies. Generally, the leases give to the companies the exclusive rights to explore for, drill and extract oil, gas and minerals on the property and reserve to the fee owners a fraction in value or in kind of the oil, gas and minerals so produced. Local county tax assessors assessed the value of the oil companies' interests in the leases for the purpose of levying against them county ad valorem taxes for 1973. The counties acted under Section 193.481(1), Florida Statutes (1973), which provides:
"193.481 Assessment of oil, mineral, and other subsurface rights  (1) Whenever the mineral, oil, gas, and other subsurface rights in or to real property in this state shall have been sold or otherwise transferred by the owner of such real property, or retained or acquired through reservation *1064 or otherwise, such subsurface rights shall be taken and treated as an interest in real property subject to taxation separate and apart from the fee or ownership of the fee or other interest in the fee. Such mineral, oil, gas, and other subsurface rights, when separated from the fee or other interest in the fee, shall be subject to separate taxation. Such taxation shall be against such subsurface interest and not against the owner or owners thereof or against separate interests or rights in or to such subsurface rights."
After exhaustion of administrative remedies, five suits by five oil companies in the Circuit Court for Santa Rosa County and one suit by Amoco Production Company in the Circuit Court for Hardee County seeking declarative and injunctive relief from the taxation were brought against J. Ed Straughn, Executive Director of the Department of Revenue, local tax assessors and local tax collectors.
The Circuit Court for Hardee County concluded that a legislative intent to tax Amoco Production's leasehold interest could not be discerned from the statute and furthermore that under Miller v. Carr[1] the interest created in Amoco, rather than being a possessory interest in real property, was no more than a contractual license to explore and produce. Since the leasehold interest was not one in property, it could not be subjected to real property taxes. Accordingly, final judgment was granted in favor of Amoco, the defendants were enjoined from collection of the taxes, and the assessment was declared illegal. Based on substantially the same reasoning, the Circuit Court for Santa Rosa County declared nontaxable the leasehold interests of the oil companies and granted a consolidated summary final judgment in their favor.
The judgment of the Circuit Court for Hardee County was appealed to the District Court of Appeal, Second District. In its opinion the court distinguished Miller v. Carr, held that the Legislature may tax leasehold interests in realty, found in the statute legislative intent to tax the leasehold interests of Amoco and reversed the judgment.[2] Amoco filed a petition for a writ of certiorari in this Court.
While the Amoco case was pending here, the District Court of Appeal, First District, rendered its decision on the appeal of the other judgment. The court found the wording of the statute to be ambiguous, so that legislative intent to subject the leasehold interests to taxation could not be clearly determined. Following the rule that the terms of a statute imposing taxes must be clear and specific and that tax statutes should be construed liberally in favor of the taxpayer, the court affirmed the judgment. The decision was certified to be one which passes upon a question of great public interest.[3]
The Director of the Department of Revenue petitioned this Court for five writs of certiorari[4] to the District Court of Appeal, First District. Santa Rosa County tax officials brought a separate petition for a like writ. We granted certiorari. The six cases were consolidated with the Amoco Production case for purposes of argument and decision. We have jurisdiction of all the cases because of conflict between the two decisions. Article V, Section 3(b)(3), Florida Constitution.
Preliminarily we agree with the Second District Court that Miller v. Carr has no influence here. At the time of that decision Section 193.481(1) had not been enacted. Furthermore, the issue before the Miller court is completely distinct from the issue here. As the Second District Court said:
"... Clearly, the court was there concerned only with the alienability by the lessor of a reserved interest in the *1065 unsevered oil. Here, we are concerned with the taxability of the total interest in the lessee, i.e., of his right to occupy, explore and probe the land together with his inchoate interest in the unsevered oil... ." 309 So.2d at 41.
The issue before us then is whether under the statute the leasehold interests are interests in real property which the Legislature intended should be subject to taxation. We hold that they are taxable interests in real property. It has long been held that the Legislature may classify leasehold interests as real property for tax purposes. For example, in Williams v. Jones, 326 So.2d 425 (Fla. 1975), we held that the Legislature has the power constitutionally to treat leasehold interests in public land as real property for ad valorem tax purposes. Indeed, the oil companies concede that the Legislature has the inherent power to define real property for tax purposes. Their argument is that the Legislature did not clearly do so by enactment of Section 193.481(1), Florida Statutes.
Although the operative effect of the statute is not spelled out in terms as clear as is possible within the limits of the English language, we think the purpose the Legislature intended the statute to have is clear. That purpose is to classify leasehold interests in subsurface minerals, oil and gas as interests in real property and to have them taxed accordingly. The statute recites that whenever rights to subsurface minerals, oil or gas have been sold or "otherwise transferred" they shall be treated as an interest in real property. The broad terms "otherwise transferred" encompass a transfer by lease. When these rights are separated from the fee, as they are when transferred by lease, the statute directs that they be subject to separate taxation. The oil companies are the only ones with the technological power to find and extract oil, gas and minerals from the subsurface. There is little difference whether the rights to the subsurface minerals are transferred to them by deed or lease, since in either case they can then extract the minerals and become the true owners of the severed minerals in fact. It is only just that the tax burden generated by subsurface mineral rights fall on those who benefit from possession of those rights, and it is clear that the Legislature was motivated by such a concern.
Our conclusion of legislative intent is bolstered by a comparison of the present statute with its predecessor, Section 193.221, Florida Statutes (1961), which specifically exempted leasehold interests. The exemption was deleted when the present statute was enacted. All property is subject to taxation unless expressly exempt and exemptions are strictly construed against the party claiming them. State ex rel. Wedgworth Farms, Inc. v. Thompson, 101 So.2d 381 (Fla. 1958).
Accordingly, the decision of the District Court of Appeal, First District, is quashed, the writ to the District Court of Appeal, Second District, is discharged, and the causes remanded for proceedings consistent with this opinion.
It is so ordered.
OVERTON, C.J., and ENGLAND, SUNDBERG and HATCHETT, JJ., concur.
DREW (Retired), J., dissents with an opinion, with which ADKINS, J., concurs.
DREW, Justice (Retired), dissenting.
It is not necessary for us to decide whether the legislature may constitutionally authorize the levy of ad valorem (emphasis mine) taxes on mineral leases of the kind involved in these cases. A study of these, and related acts, simply leads to the inescapable conclusion that there was no intention to do so.
The words used in the act viz. "otherwise transferred" immediately following the word "sold" clearly indicates an intention to tax only an interest in real estate that would be susceptible to intelligent and uniform appraisal, levy and enforcement by methods constitutionally authorized and long recognized by the legislature in dealing with ad valorem taxation on real estate. These "oil leases," if they can properly be *1066 classified as leases[1] simply do not, in my view, relate to "an interest in real estate." The problems which will arise in the appraisal of such leases, equalization of values as the organic law requires and in levy and enforcement are obvious. And, I'm sure, the members of the legislature charged with the duty of drafting these laws are aware of this even more than we are. Moreover, it seems to me they have already spoken on this subject, when, in the enactment of § 211.13 F.S.A. they stated, "it is impossible under known valuation methods to accurately ascertain the time value of oil and gas in place." These acts must be construed together to ascertain legislative intent. And both acts can be preserved by a recognition that so called "oil leases" are not interests in real property.
The decision authorized by Judge McCord below[2] reaches the same conclusions I do but in a much more detailed manner. I agree completely with that decision as supplemented by these additional observations.
I therefore respectfully dissent.
ADKINS, J., concurs.
NOTES
[1] 141 Fla. 318, 193 So. 45 (Fla. 1940), 137 Fla. 114, 188 So. 103 (Fla. 1939).
[2] Straughn v. Amoco Production Co., 309 So.2d 39 (Fla. 2d DCA 1975).
[3] Fisher v. Sun Oil Co., 330 So.2d 76 (Fla. 1st DCA 1976). The certification vests jurisdiction in this Court. Art. V, § 3(b)(3), Fla. Const.
[4] One for each of the cases consolidated before the Court.
[1] I agree with the Hardee County Circuit Judge's view that these documents are no more than a "contractual license to explore and produce."
[2] 330 So.2d 76 (Fla. 1st DCA 1976).